UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

In re:                                          Case No.      23-17470-MAM
                                                Chapter       11
DARJEN, INC.,

                    Debtor
_____/

### 1ST AMENDED DISCLOSURE STATEMENT

The Debtor, DARJEN, INC., submits this Disclosure Statement (the "Disclosure Statement") to its creditors and other parties in interest. The approval of the Disclosure Statement is not tantamount to a decision by the Court on the merits of the Plan of Reorganization (the "Plan" or "Plan of Reorganization.")

### I. INTRODUCTION

A.      Purpose of this Document.

This Disclosure Statement is submitted pursuant to the requirement imposed on the proponent of a Plan of Reorganization by 11 U.S.C. § 1125. The purpose is to disclose information deemed to be material, important, and necessary for the creditors to arrive at a reasonably informed decision in exercising their right, or to vote for acceptance or rejection of the Plan of Reorganization. This Disclosure Statement should be read in conjunction with the accompanying Plan. The Plan is a legally binding document once it is approved by the Court, and should be read in its entirety. Accordingly, creditors may wish to consult with their own attorney to more fully understand the Plan.

No representations concerning the Debtor, its future business operations, the value of its

property or the value of any benefits offered to holders of claims or interests in connection with the Plan are authorized other than as set forth in this Disclosure Statement. Any representations or inducements made to secure acceptance of the Plan other than those contained in this Disclosure Statement should not be relied upon by a creditor or interest holder. Any such additional representations and inducements should be reported to counsel for the Debtor at the address below and to the United States Trustee.

The information contained in this Disclosure Statement has not been subject to certified audit and is based in large extent on information maintained and collected by the Debtor. While every effort has been made to provide the most accurate information available, the books and records of the Debtor are not warranted or represented to be completely and historically accurate. Further, much of the information contained herein consists of projections of future performance. While every effort has been made to insure that the assumptions are valid and that the projections are as accurate as can be made under the circumstances, neither the Debtor nor its accountant undertakes to certify or warrant the absolute accuracy of the projections.

B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.      Time and Place of the Hearing to Confirm the Plan

The hearing at which the Court will determine whether to confirm the Plan will take place on _____ at United States Bankruptcy Court, 1515 N. Flagler Drive, Room 801, Courtroom B, West Palm Beach, Florida.

2.      Deadline for Voting to Accept or Reject the Plan

2

If you are entitled to accept or reject the plan, vote on the enclosed ballot and return the ballot to the United States Bankruptcy Court, 1515 N. Flagler Drive, Room 801, West Palm Beach, FL 33401. See section VIII for a discussion of voting eligibility requirements.

The ballot must be filed with the Bankruptcy Court by _____ or it will not be counted.

3.      Deadline for Objecting to the Confirmation of the Plan Objections to the confirmation of the Plan must be filed with the Court and served upon the Debtor; attorney for the Debtor, Brian K. McMahon, P.A., 1401 Forum Way, Suite 730 West Palm Beach, FL 33401; Martin Ochs, Office of the U.S. Trustee, 51 S.W. First Ave, Suite 1204, Miami, FL 33130; and all interested parties by

_____.

4.      Identity of Person to Contact for More Information

If you want additional information about the Plan, you should contact Brian K. McMahon, 1401 Forum Way, Suite 730, West Palm Beach, FL 33401.

5.      Effective Date. As the term is used in this disclosure statement and the liquidating plan, the effect date shall be shall be the first business day following fourteen (14) days after the entry of Order of Confirmation.

## II. BACKGROUND

The Debtor, DARJEN, INC. (hereinafter the "Debtor"), is a compound pharmacy that was formed on October 27, 2000. The 100% owner is Michelle Notartomaso. The pharmacy is operated by her husband Anthony Accaputo. All of the Debtor's income is derived from retail sales. The Debtor leases property located at 11940 US Hwy One, Suite 160, Palm Beach Gardens, FL 33408.

The company has been profitable since its inception.  In the beginning of 2023, the Debtor was having difficulty obtaining product and got behind on its rent payments.  The landlord was seeking to evict the Debtor at the time that this case was filed.  Since the filing, the Debtor has obtained a new distributor and the company is flourishing.  It has concentrated on the growing semaglutide market.  In the three months since the case was filed, it has netted over $18,000.00 per month.

### III. FINANCIAL INFORMATION

The Debtor has filed schedules of assets, liabilities, income and expenses, a Statement of Financial Affairs, and Monthly Operating Reports which contain the most accurate and current information available to the Debtor.

A.      Real Property. The Debtor does not own real property.

B.      Personal Property.  The Debtor's inventory varies daily, but it usually has about $40,000 worth of merchandise on hand each day.  The furniture, fixtures and equipment are worth approximately $62,500.00.

C.      Ability to Fund and Complete Plan

The Debtor's ability to fully fund the plan depends solely on the Debtor's retail sales.

### IV. EXECUTORY CONTRACTS

The Debtor leases commercial property.  The Debtor will be assuming the lease.

## V. LIQUIDATION ANAYLSIS

Personal Property

| | | |
|---|---|---|
| Inventory | $40,000.00 | |
| Furniture, Fixtures & Equip | $62,500.00 | |
| | | $102,500.00 |

Liabilities

Secured Claims

| | | |
|---|---|---|
| Titan Asset Purchasing | $104,403.82 | |
| US SBA | $  98,196.07 | |
| US SBA | $543,885.28 | |
| Clover Advance Group | $  20,798.61 | |
| Total Debt | | $767,282.96 |
| Amount available for general unsecured creditors | | 0.00 |

## VI. SPECIAL RISK FACTORS

Certain substantial risk factors are inherent in most plans of reorganization in Chapter 11 cases. If such plans are accepted, it is usually because they represent a greater return in dividends than in a liquidating Chapter 7 case.  The risk factor in this case is that the Debtor will not perform as projected and will not be able to pay its debt.

ALL THE RISK FACTORS INHERENT IN A PLAN OF REORGANIZATION UNDER CHAPTER 11 ARE PRESENT IN THIS CASE. CREDITORS ARE URGED TO CAREFULLY READ THIS DISLOSURE STATEMENT AND THE ACCOMPANYING PLAN OF

REORGANIZATION SO THAT AN INFORMED JUDGMENT CAN BE MADE WITH RESPECT TO VOTING ON THE PLAN.

## VII. CLAIMS

The deadline to file a proof of claim was November 27, 2023.

## VIII. SUMMARY OF PLAN OF REORGANIZATION

A.    Purpose of the Plan of Reorganization

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.    Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has not placed the following claims in any class:

1.    Administrative Claims

Administrative expenses are costs or expenses or administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative

expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

<u>Administrative claims:</u>

| Professional fees: | Estimated $10,000.00 | Subject to Court authorization, to be paid in full on effective date or as agreed to by attorney and Debtor. To date, the Debtor has paid a retainer of $4,000.00 |
| Office of the U.S. Trustee | is due for 2 quarters | Paid in full on effective date |
| | | |

2.      Priority Claims

The Debtor is responsible to the Florida Department of Revenue in the amount of $313.26. The IRS also has a priority claim in the amount of $414,287.73. These claims will be paid as set forth below.

C.      Classes of Claims and Equity Interests

The Plan shall provide for the payment of all expenses of this proceeding, including fees due the Office of the U.S. Trustee. The accompanying Plan of Reorganization divides creditors into the following classes:

Class 1 – The secured pre-petition claim of Titan Asset Purchasing in the amount of $104,403.82. The Debtor will pay $1,740.60 per month until the claim is paid in full. The class is impaired.

Class 2 – The secured pre-petition claim of U.S. Small Business Association in the amount

of $98,196.07.  The Debtor will pay according to the terms of its agreement – 15 years from April 14, 2019 at 3.31% by paying $949.00 per month until the claim is paid in full.  The class is impaired.

Class 3 - The secured pre-petition claim of U.S. Small Business Association.  The SBA has a total claim of $543,885.28, of which $121,500.00 is claimed as secured.  It is in the best interests of all creditors that the Debtor pay in accordance with the terms of the loan and pay $2,616.89 per month for 30 years from May 8, 2022.  The class is impaired.

Class 4 - The secured pre-petition claim of Clover Advance Group, LLC in the amount of $20,798.61.  The Debtor has been making adequate protection payments in the amount of $1,500.00 per month.  The Debtor will continue to pay this amount until the creditor is paid in full.  The class is impaired.

Class 5 - The priority claims of the Florida Department of Revenue totaling the amount of $313.26.  These claims will be paid in full on the effective date.  The class is unimpaired.

Class 6 – The priority claim of the Internal Revenue Service.  The IRS filed a priority claim in the amount of $414,287.73.  The Debtor has filed the missing returns which will reduce the amount owed to $350,704.09.  The claim is entitled to 4% interest and must be paid within 60 months of filing.  The Debtor will pay $6,875.66 per month until the claim is paid in full.  The class is impaired.

Class 7 - General unsecured creditors.  The amount owed to unsecured creditors totals $509,193.15.  Unsecured creditors will be paid in full over sixty months.  The Debtor will pay $8,500.00 per month which the creditors will receive pro rata share. The class is impaired.

Class 8 - Equity holders.  The equity holders in the Debtor will continue to own and operate the Debtor.

The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6) within ten (10) days of the entry of this order for pre-confirmation periods and simultaneously provide to the United States Trustee an appropriate affidavit indicating the cash disbursements for the relevant period. The reorganized Debtor shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) based upon all disbursements of the reorganized debtor for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), until the earlier of the closing of this case by the issuance of a Final Decree by the Court, or upon the entry of an Order by this Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the party responsible for paying the post-confirmation United States Trustee fees shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the cash disbursements for the relevant period.

## IX. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requires that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor at least as much as the creditor would receive in a chapter 7 liquidation case, unless the creditor votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.    Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to accept or reject the Plan. A creditor has a right to vote for or against the Plan only if that creditor has a claim that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that classes are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

1.    What is an Allowed Claim?

Only a creditor with an allowed claim has the right to vote on the Plan.  Generally, a claim is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim. When a claim is not allowed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was November 27, 2023.***

2.    What is an Impaired Claim?

As noted above, the holder of an allowed claim has the right to vote only if it is in a class that is impaired under the Plan. As provided in § 1124 of the Code, a class in considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3.    Who is Not Entitled to Vote?

The holders of the following types of claims and equity interests are not entitled to vote:

–    holders of claims and equity interests that have been disallowed by an order of the Court;

–      holders of claims and equity interests that are not "allowed claims" or "allowed equity interests", unless they have been "allowed" for voting purposes.

––      holders of claims or equity interests in unimpaired classes;

–      holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3) and (a)(8) of the Code;

––      holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and

–      administrative expenses

***Even if you are not entitled to Vote on the Plan, you have a right to object to Confirmation of the Plan.***

     4.      <u>Who Can Vote in More than One Class?</u>

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

     B.      <u>Votes Necessary to Confirm the Plan</u>

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class of creditors, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes as discussed below in Section B.2.

     1.      <u>Votes Necessary for a Class to Accept the Plan</u>

A class of claims accepts the Plan if both of the following occur: (1) the holders of more

11

than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

    <u>2.</u>    <u>Treatment of Nonaccepting Classes</u>

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manned prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes or of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cram down" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

    C.    <u>Absolute Priority Rule</u>

Pursuant to 11 U.S.C. § 1129(2)(B) a plan is fair and equitable if the holder of any claim or interest that is junior to the claims of an unsecured class of claims will not receive or retain under the plan on account of such junior claim or interest any property.

### X. EFFECT OF CONFIRMATION OF PLAN

On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged

of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely

complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy

Procedure, or (iii) of a kind specified in § 1141(d)(6)(B). After the effective date of the Plan,

your claims against the Debtor will be limited to the debts described in clauses (i) through (iii)

of the preceding sentence.

## XI. CONCLUSION

The Plan offers to pay all creditors 100% of their allowed claims.

Michelle Notartomaso, President

DARJEN, INC.
By Michelle Notartomaso, President

BRIAN K. MCMAHON, P.A.
1401 Forum Way, Suite 730
West Palm Beach, FL 33401
Tel (561) 478-2500
Fax (561) 478-3111
briankmcmahon@gmail.com
By:/s/ Brian K. McMahon
    Brian K. McMahon
    FL Bar No. 853704

**Dajmi Inc**

**five year plan**

**Case 23-17470-MAN**

| Year | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|
| Sales | $ 1,300,000.00 | $ 1,365,000.00 | $ 1,446,900.00 | $ 1,533,714.00 | $ 1,625,736.84 | $ 1,707,023.68 |
| Expenses | $ 950,000.00 | $ 980,000.00 | $ 1,094,000.00 | $ 1,127,220.00 | $ 1,183,581.00 | $ 1,242,760.05 |
| Payoff Ch.1 | $ 270,000.00 | $ 270,000.00 | $ 270,000.00 | $ 270,000.00 | $ 270,000.00 | $ 270,000.00 |
| profit before taxes | $ 80,000.00 | $ 115,000.00 | $ 82,900.00 | $ 136,494.00 | $ 172,155.84 | $ 464,263.63 |

Explanation of Five Year Plan.

AlimedRx will attain a growth rate between 5-6% per year. The stability of market place will

Allow the cost to stabilize with groth in the Rx volume, therefor increasin profitability.

Since the Chapter 11 payoff figure will be reduced each year by $270,000.00 the emergance from

the plan will be attained in 55 months.